IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daimen Joseph Irizarry,<br><br>Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Respondents. | No.  CV-16-0428-PHX-JAT (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE JAMES A. TEILBORG, SENIOR U.S. DISTRICT JUDGE:

Daimen Joseph Irizarry filed a Petition for Writ of Habeas Corpus challenging his convictions and sentences in Maricopa County Superior Court for his role in the death of Gilbert Police Lieutenant Eric Shuhandler.  As explained below, the Court recommends that his Petition be denied and dismissed with prejudice.

**Background**

Irizarry was indicted on multiple counts of aggravated assault, drive by shooting, and unlawful flight from a law enforcement vehicle. (Doc. 10-3)  These charges all stemmed from the January 28, 2010 death of Gilbert Police Lieutenant Eric Shuhandler. (*Id.*)

At trial, the jury heard evidence that while Irizarry was pulled over for a traffic violation, his passenger, Christopher Redondo, shot and killed Lt. Shuhandler.  Irizarry then sped away and he was arrested after an hour-long high-speed chase and a brief shootout.  (Doc. 10-8 at ¶ 2)   Irizarry argued that he was under the influence of

1  methamphetamine, panicked when he heard the gun shot, and drove off because he was
2  scared that Redondo would kill him too.  (Doc. 9, Ex. C at 60-66)

3  As part of the State's case-in-chief, Melissa Kingsley, a radio dispatcher, testified
4  about her conversation with Lt. Shuhandler during the traffic stop. (Doc. 9, Ex. A at 74-
5  83)  Through her testimony, the State introduced Exhibit 121, a recording of her
6  conversation with Lt. Shuhandler, and played it for the jury.  (*Id*. at 80)  Kingsley
7  testified that Lt. Shuhandler had called at 10:42 and they had switched communication
8  channels at 10:49.  (*Id.* at 77-78)  Then, the State asked her several questions about
9  whether Exhibit 121 was complete:

> Q:  And does [the recording] also include everything or the clip that we have here up until the time that you no longer corresponded with him; correct?
>
> A:  Yes
>
> Q:  And does include the time on there?  [sic] From your memory, does it include at least real time from the time he called at 10:49 with you until the communication ended is real time on the time; correct?  [sic]
>
> A:  Yes
>
> Q:  That will give us a definite or exact time as to when things happened; correct?
>
> A:  Yes.

19  (*Id*. at 79)  Irizarry's counsel did not object to the introduction of Exhibit 121 and he did
20  not cross examine Kingsley.  (*Id*. at 80, 83)

21  Irizarry recalled Kingsley to testify.  (Doc. 9, Ex. B at 33-44)  The second time she
22  testified, Kingsley stated that she did not edit Exhibit 121, acknowledged that someone
23  had edited out her contemporaneous communication with other officers, and
24  acknowledged that Exhibit 121 would have been longer if those communications had
25  been left in the recording.  (*Id*. at 34-40)  During cross-examination with the State,
26  Kingsley agreed that she had "previously told us that the whole conversation took [sic]
27  and the times are 10:47 to 10:53" and that she had previously testified that the tape was
28  six minutes.  (*Id*. at 41-42)  On redirect, Kingsley stated that she did not remember

1 whether she had originally testified about 10:47 and 10:53 and that she did not remember
2 whether or not the tape should be six minutes.  (*Id*. at 43-44)

3 After six days of trial, the jury found Irizarry guilty of all the charged counts and, subsequently, the Court sentenced him to 107.5 years.  (Doc. 1 at 1)  Irizarry moved to vacate the judgment arguing that the State had intentionally used false evidence when it introduced Exhibit 121 and that the State had intentionally used perjured evidence from Kingsley and from law enforcement officers.  (Docs. 1-2, 1-3, 10-11)  The Court denied the motion.  (Doc. 1-11; Doc. 9, Ex. P)

On direct appeal, Irizarry argued that the Court should not have denied his motion to vacate.  (Doc. 9, Exs. D, E)  The Arizona Court of Appeals disagreed and affirmed his convictions and sentences.  (Doc. 1-12, Doc. 9, Ex. F)  Specifically, the Court of Appeals found that Kingsley's "testimony about the brief traffic stop before Redondo shot the office was less prejudicial than other evidence presented during trial" and that her testimony "did not have a material effect on the verdict."  (*Id*. at ¶ 9)  The Arizona Supreme Court denied Irizarry's petition for review.  (Doc. 1-1; Doc. 9, Exs. G, H)

Irizarry timely initiated post-conviction proceedings and argued that his appellate counsel was ineffective for failing to argue prosecutorial misconduct.  (Doc. 1-4)  The Superior Court denied relief.  (Doc. 1-9)  Irizarry appealed this denial and the Arizona Court of Appeals granted review but denied relief.  (Docs. 1-5, 1-6, 1-7)  The Arizona Supreme Court denied his petition for review.  (Docs. 1-10)

Irizarry timely filed his Petition for Writ of Habeas Corpus in this Court and argues that (1) the "prosecutor intentionally introduced false evidence for the sole purpose of impeaching Mr. Irizarry's trial testimony," (2) the "prosecutor, after getting caught introducing false evidence, purposefully used factually false questions to try and cover it up", and (3) the "[s]ix testifying law enforcement officers intentionally committed perjury to help obtain the convictions against Mr. Irizarry."  (Doc. 1)  Respondents argue that Claims One and Two fail on the merits and Claim Three is unexhausted and subject to a procedural bar.  (Doc. 9)  In reply, Irizarry argues that his

testimony about what happened during the traffic stop accounted for the entire seven or so minutes of the full dispatcher call and that the State shortened the dispatcher recording so that the jury would question Irizarry's credibility:  "[i]f the prosecutor could get the jury to question Mr. Irizarry's testimony regarding what happened leading up to the shooting of Lt. Shuhandler, then the jury would also have to question Mr. Irizarry's testimony that he was acting under duress when he drove from the scene towards Globe." (Doc. 10 at 12)

## Analysis

*Claim Three:  law enforcement testimony*.  In Claim Three, Irizarry claims that six of the law enforcement officers who testified at his trial committed perjury.  (Doc. 1 at 8) Irizarry raised this claim in his Motion to Vacate and the Superior Court found it unpersuasive because each of the six had been impeached at trial for the same inconsistent testimony.  (Doc. 9, Ex P at 1).  On direct appeal and again in post-conviction relief proceedings, Irizarry did not raise this issue.  (Doc. 1-9; Doc. 9. Ex. D)

Exhaustion of Remedies.  A state prisoner must properly exhaust all state court remedies before this Court can grant an application for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).  To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory.  *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66.

Here, Irizarry did not present this argument to the Arizona Court of Appeals and so this claim is not exhausted for purposes of this Court's habeas review.

Procedural Default.  A claim can also be subject to an express or implied procedural bar.  *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010).  An express

1 procedural bar exists if the state court denies or dismisses a claim based on a procedural
2 bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis
3 for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). *Stewart v. Smith*,
4 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of
5 federal law because they do not depend upon a federal constitutional ruling on the
6 merits"); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist
7 when a state strictly or regularly follows its procedural rule). *See also Ylst v.
8 Nunnemaker*, 501 U.S. 797, 801 (1991); *Robinson*, 595 F.3d at 1100. An implied
9 procedural bar exists if a claim was not fairly presented in state court and no state
10 remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298-99
11 (1989); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Beaty v. Stewart*, 303 F.3d 975, 987
12 (9th Cir. 2002); *Poland v. Stewart*, 169 F.3d 573, 586 (9th Cir. 1999); *White v. Lewis*, 874
13 F.2d 599, 602 (9th Cir. 1989).

14 Here, Claim Three is subject to a procedural bar because it was not fairly
15 presented to the Arizona Court of Appeals and it is now too late to do so.

16 This Court can review a procedurally defaulted claim if the petitioner can
17 demonstrate either cause for the default and actual prejudice to excuse the default, or a
18 miscarriage of justice. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321
19 (1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986);
20 *States v. Frady*, 456 U.S. 152, 167-68 (1982).

21 Irizarry claims that he is actually innocent because he acted under duress and the
22 law enforcement officers' testimony was important to show accomplice liability. (Doc.
23 10 at 15) This argument is unpersuasive. As the Court of Appeals noted, "[t]he jury
24 could have believed that he was under the influence of earlier methamphetamine use,
25 panicked when he heard the gun shot, drove away, and kept driving because he was
26 afraid that Redondo would use the gun against him, and still [have] convicted him."
27 (Doc. 9, Ex. F at ¶9)

28

*Claims One and Two: Exhibit 121*.

On habeas review of a timely petition with exhausted arguments, this Court can only grant relief if the petitioner has demonstrated prejudice from the adjudication of a claim that either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). *Lambert v. Blodgett*, 393 F.3d 943, 970, n.16 (9th Cir. 2004); *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir. 2000). This review is further limited because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, "alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

Under clearly established Supreme Court precedent, a habeas claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). Relief is only available if the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (quoting *Donnelly*, 416 U.S. at 642). "A prosecutor's knowing use of false testimony to get a conviction violates due process." *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Such a claim requires a habeas petitioner to show "that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) ... the false testimony was material." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (quoting *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003)). To establish that false testimony was material, the petitioner must show a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87

L.Ed.2d 481 (1985)). "Under this materiality standard, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Hayes*, 399 F.3d at 984 (internal quotation omitted).

Assuming without deciding that the testimony at issue was, in fact, false and that the State knew or should have known this, the Court cannot find that the false testimony was material. First, as Irizarry acknowledges, the dispatch record was irrelevant to the charged crimes.[1] (Doc. 10 at ¶ 23)

Second, and crucially, Irizarry, through counsel, timely understood the potential issues with Exhibit 121 and recalled Kingsley to the stand. In front of the jury, Irizarry's counsel questioned Kingsley and the jury heard her answer follow-up questions about Exhibit 121: who created it, what was missing from it, and inconsistencies in her timeline. In other words, any concerns about Exhibit 121 were disclosed to the jury during Irizarry's case in chief. *See Soto v. Ryan*, 760 F.3d 947, 961 (9th Cir. 2014) (state court's decision to deny *Napue* claim was not "unreasonable because the evidence Petitioner claims reveals the deception in Godoy's direct examination testimony was in fact disclosed to the jury during trial"). Moreover, "defense counsel effectively cross-examined the witness, so that it was obvious to the jury that" her testimony contained inconsistencies. *Mata v. Sherman*, 2016 WL 1642642, *10 (E.D. Cal. Apr. 25, 2016). *See also Rosencrantz v. Lafler*, 568 F.3d 577, 585-86 (6th Cir. 2009) (collateral review does not lie when defense focused jury on inconsistent statements during cross-examination).

---

[1] Arguably, irrelevant evidence should not have been admitted. However, habeas relief does not lie for review of whether a state evidentiary ruling violated state law. *Estelle v. McGuire*, 502 U.S. 62 (1991). And, arguably, it should have been the State and not Irizarry who clarified for the jury that Exhibit 121 was an edited version of the recording. *U.S. v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000) ("Where the prosecutor knows that his witness has lied, he has a constitutional duty to correct the false impression of the facts."). However, that is a question for the State Bar of Arizona and not this Court.

Nevertheless, Irizarry argues that Exhibit 121 was an attempt to "make the jury question Mr. Irizarry's credibility" because Irizarry's testimony about what happened during the traffic stop would only be credible if the stop was longer than the recording in Exhibit 121. (Doc. 10 at 11-12) Thus, if the jury questioned Irizarry's testimony about the traffic stop, "then the jury would also have to question Mr. Irizarry's testimony that he was acting under duress when he drove from the scene." (Doc. 10 at 12) This argument is too far removed from the elements of the crimes with which Irizarry was charged and convicted. The conversation with the dispatcher occurred before Lt. Shuhandler was shot and before Irizarry drove away. Thus, "[e]ven assuming the prosecution's failure to correct this testimony at trial implicated [Irizarry's constitutional rights], there does not appear to be any reasonable likelihood that the false testimony *could* have affected the judgment of the jury." *Hamilton v. Ayers*, 583 F.3d 1100, 1111 (9th Cir. 2009) (internal citations omitted) (emphasis in original).

**IT IS THEREFORE RECOMMENDED** that Daimen Joseph Irizarry's petition for writ of habeas corpus be **denied and dismissed with prejudice.**

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See*, 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without

further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 20th day of June, 2016.

David K. Duncan
United States Magistrate Judge