WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daimen Joseph Irizarry,<br><br>    Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>    Respondents. | No. CV-16-00428-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus ("Petition"). The Magistrate Judge to whom this case was assigned issued a Report and Recommendation (R&R) recommending that this Court deny the Petition. Doc. 11. Petitioner, through counsel, filed objections to the R&R. Doc. 12.

**I.     Review of R&R**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D. Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the

[Magistrate Judge's] recommendations to which the parties object."). District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("the court shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made."). Thus, this Court will review the portions of the R&R to which Petitioner objected de novo.

## II.   Review of State Court Decision

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. With respect to any claims that Petitioner exhausted before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law"[1] or was based on an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Further, this Court must presume the correctness of the state court's factual findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998). Additionally, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

## III.   Background

The R&R at pages 1-4 recounts the background of Petitioner's case. Petitioner makes 5 objections to this portion of the R&R. To add context to Petitioner's objections, the Court quotes this factual background in its entirety:

> Irizarry was indicted on multiple counts of aggravated assault, drive by shooting, and unlawful flight from a law enforcement vehicle. (Doc. 10-3) These charges all stemmed from the January 28, 2010 death of Gilbert Police Lieutenant Eric Shuhandler. (*Id*.)
>
> At trial, the jury heard evidence that while Irizarry was pulled over for a

---

[1] Further, in applying "Federal law" the state courts only need to act in accordance with Supreme Court case law. *See Carey v. Musladin,* 549 U.S. 70, 74 (2006).

traffic violation, his passenger, Christopher Redondo, shot and killed Lt. Shuhandler. Irizarry then sped away and he was arrested after an hour-long high-speed chase and a brief shootout. (Doc. 10-8 at ¶ 2) Irizarry argued that he was under the influence of methamphetamine, panicked when he heard the gun shot, and drove off because he was scared that Redondo would kill him too. (Doc. 9, Ex. C at 60-66)

As part of the State's case-in-chief, Melissa Kingsley, a radio dispatcher, testified about her conversation with Lt. Shuhandler during the traffic stop. (Doc. 9, Ex. A at 74-83) Through her testimony, the State introduced Exhibit 121, a recording of her conversation with Lt. Shuhandler, and played it for the jury. (*Id.* at 80) Kingsley testified that Lt. Shuhandler had called at 10:42 and they had switched communication channels at 10:49. (*Id.* at 77-78) Then, the State asked her several questions about whether Exhibit 121 was complete:

> Q: And does [the recording] also include everything or the clip that we have here up until the time that you no longer corresponded with him; correct?
>
> A: Yes
>
> Q: And does include the time on there? [sic] From your memory, does it include at least real time from the time he called at 10:49 with you until the communication ended is real time on the time; correct? [sic]
>
> A: Yes
>
> Q: That will give us a definite or exact time as to when things happened; correct?
>
> A: Yes.

(*Id.* at 79) Irizarry's counsel did not object to the introduction of Exhibit 121 and he did not cross examine Kingsley. (*Id.* at 80, 83)

Irizarry recalled Kingsley to testify. (Doc. 9, Ex. B at 33-44) The second time she testified, Kingsley stated that she did not edit Exhibit 121, acknowledged that someone had edited out her contemporaneous communication with other officers, and acknowledged that Exhibit 121 would have been longer if those communications had been left in the recording. (*Id.* at 34-40) During cross-examination with the State, Kingsley agreed that she had "previously told us that the whole conversation took [sic] and the times are 10:47 to 10:53" and that she had previously testified that the tape was six minutes. (*Id.* at 41-42) On redirect, Kingsley stated that she did not remember whether she had originally testified about 10:47 and 10:53 and that she did not remember whether or not the tape should be six minutes. (*Id.* at 43-44)

After six days of trial, the jury found Irizarry guilty of all the charged counts and, subsequently, the Court sentenced him to 107.5 years. (Doc. 1 at 1) Irizarry moved to vacate the judgment arguing that the State had intentionally used false evidence when it introduced Exhibit 121 and that

>the State had intentionally used perjured evidence from Kingsley and from law enforcement officers. (Docs. 1-2, 1-3, 10-11) The Court denied the motion. (Doc. 1-11; Doc. 9, Ex. P)
>
>On direct appeal, Irizarry argued that the Court should not have denied his motion to vacate. (Doc. 9, Exs. D, E) The Arizona Court of Appeals disagreed and affirmed his convictions and sentences. (Doc. 1-12, Doc. 9, Ex. F) Specifically, the Court of Appeals found that Kingsley's "testimony about the brief traffic stop before Redondo shot the office[r] was less prejudicial than other evidence presented during trial" and that her testimony "did not have a material effect on the verdict." (*Id.* at ¶ 9) The Arizona Supreme Court denied Irizarry's petition for review. (Doc. 1-1; Doc. 9, Exs. G, H)
>
>Irizarry timely initiated post-conviction proceedings and argued that his appellate counsel was ineffective for failing to argue prosecutorial misconduct. (Doc. 1-4) The Superior Court denied relief. (Doc. 1-9) Irizarry appealed this denial and the Arizona Court of Appeals granted review but denied relief. (Docs. 1-5, 1-6, 1-7) The Arizona Supreme Court denied his petition for review. (Docs. 1-10)
>
>Irizarry timely filed his Petition for Writ of Habeas Corpus in this Court and argues that (1) the "prosecutor intentionally introduced false evidence for the sole purpose of impeaching Mr. Irizarry's trial testimony," (2) the "prosecutor, after getting caught introducing false evidence, purposefully used factually false questions to try and cover it up", and (3) the "[s]ix testifying law enforcement officers intentionally committed perjury to help obtain the convictions against Mr. Irizarry." (Doc. 1) Respondents argue that Claims One and Two fail on the merits and Claim Three is unexhausted and subject to a procedural bar. (Doc. 9) In reply, Irizarry argues that his testimony about what happened during the traffic stop accounted for the entire seven or so minutes of the full dispatcher call and that the State shortened the dispatcher recording so that the jury would question Irizarry's credibility: "[i]f the prosecutor could get the jury to question Mr. Irizarry's testimony regarding what happened leading up to the shooting of Lt. Shuhandler, then the jury would also have to question Mr. Irizarry's testimony that he was acting under duress when he drove from the scene towards Globe." (Doc. 10 at 12)

Doc. 11 at 1-4.

First, Petitioner claims that R&R's summary of this case, wherein it says Petitioner challenges his convictions and sentences for his "role" in a police officer's death, is inaccurate. Doc. 12 at 2. Specifically, Petitioner says he had no "role" in the death because he was only charged and convicted of actions that took place following the death. The Court sustains the objection to the limited extent that the Court amends the R&R to read "his role in the aftermath of," rather than just "role."

Second, Petitioner argues that the R&R misstates his position on the use of

- 4 -

1  methamphetamines.  Doc. 12 at 2.  On this point, the state court record speaks for itself
2  and the Court will rely on that record.

3  Petitioner also objects to the R&R's recounting of the facts as including that
4  Petitioner heard a gunshot.  Doc. 12 at 3.  Petitioner wants the record to reflect that he
5  only admitted to hearing a loud bang that was like a gunshot.  *Id*.  Preliminarily, the R&R
6  was not required to accept Petitioner's version of the facts as true.  Moreover, with the
7  benefit of hindsight, the R&R is correct that Petitioner in fact heard a gunshot.  Thus, the
8  R&R is correct and the objection is overruled.

9  Third, Petitioner objects to the R&R quoting of the trial transcript as saying "real
10 time on the time" when Petitioner says is actually says "real time on the tape."  Doc. 12 at
11 4.  The Court has reviewed the transcript and notes the R&R contains a typographical
12 error in this quote; the objection is sustained to this limited extent.  Although this third
13 objection spans pages 3-5 of the Petitioner's objections, this correction to a quote is the
14 only error referenced by Petitioner.  The rest of the third objection is a combination of
15 rhetorical questions and arguments about what inferences to draw from the factual
16 background.  Therefore, the Court finds no further "objection" to the R&R in these pages.

17 Fourth, at pages 5-7 of the objections, Petitioner makes arguments about how to
18 interpret the trial transcript in this case.  However, none of these arguments are actually
19 objections to the R&R's recounting of the factual background of this case.  Thus, the
20 Court finds no "objection" to the R&R in these pages.

21 Fifth, at page 3 the R&R quotes the Arizona Court of Appeals' opinion.  Petitioner
22 objects by arguing that the Arizona Court of Appeals is wrong.  Doc. 12 at 7-8.
23 However, Petitioner does not object to the accuracy of the R&R's quote.  Thus, the Court
24 finds no "objection" to the R&R in these pages.

25 Except as otherwise noted herein, the Court accepts the R&R's background.
26 **IV.   Claims in the Petition**
27 In this case, Petitioner raises three grounds for relief.  Doc. 11 at 4-8.  The R&R
28 concludes that the first two claims were exhausted in state court and the third was not.

1 *Id*.

2     **A.    Claims 1 and 2**

3     In claims one and two, Petitioner argues: "(1) the 'prosecutor intentionally
4 introduced false evidence for the sole purpose of impeaching Mr. Irizarry's trial
5 testimony,' [and] (2) the 'prosecutor, after getting caught introducing false evidence,
6 purposefully used factually false questions to try and cover it up'… ." Doc. 11 at 3.
7 These two claims turn on the trial testimony of a police dispatcher and the dispatch
8 recording between her and the victim prior to his death.

9     Petitioner argues that there were misstatements in the dispatcher's testimony. The
10 Court has reviewed the transcripts. The dispatcher was called to the stand twice in
11 Petitioner's trial: once by the prosecutor (Trial Transcript at Doc. 10-7, pages 1-11), and
12 once by the defense (Trial Transcript at Doc. 10-12, pages 1-14). The discrepancies in
13 the dispatcher's testimony on these two occasions form the basis for Petitioner's Petition.
14 There is no dispute that the testimony regarding the underlying facts on the second
15 occasion was accurate. Thus, the only issue is whether ambiguities in the testimony
16 originally, which were corrected when the witness was recalled to the stand, justify
17 habeas the relief.

18     To qualify for habeas relief, Petitioner must formulate a claim that he is in custody
19 in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §
20 2254(a). To be within this requirement, the R&R characterized Petitioner's two claims
21 as allegations of prosecutorial misconduct, which the R&R noted is a due process claim.
22 Doc. 11 at 6-7. Petitioner objects to the R&R's recitation of the governing law as being
23 factually different from Petitioner's case. Doc. 12 at 12. However, Petitioner does not
24 cite a single case or legal standard he argues actually apply to his case. Instead, at least
25 57 times in the objections, Petitioner states that the prosecutor "lied," was "dishonest," or

introduced "false" evidence.[2] Even if these accusations were true,[3] they would still have to fit within the legal framework of prosecutorial misconduct (or some other legal theory) to justify habeas relief as a due process violation. Thus, Petition's objections to the R&R's recitation of the law as inapplicable are overruled. Accordingly, the Court accepts and adopts the R&R's summary of the controlling law, which is:

> Under clearly established Supreme Court precedent, a habeas claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). Relief is only available if the alleged misconduct "so infected the

---

[2] On this point, the Court notes that Petitioner's counsel repeatedly claims the prosecutor "told" the jury certain evidence. However, all of the "words" about which Petitioner complains were contained in questions the prosecutor asked a witness. Questions by lawyers are not evidence. Only the witness's answers are evidence. Thus, Petitioner's counsel's repeated suggestion that the prosecutor somehow testified, or otherwise "told" the jury this evidence is a mischaracterization of the record.

For example, in Petitioner's objections regarding testimony about whether the recording was "real time," Petitioner states as follows: "This was done by the prosecutor—in his own words—not by the testimony of a witness." (Doc. 12 at 13). In reality, the record reflects the following exchange:

> Q [prosecutor]: And does [it] include the time on there? From your memory, does it include at least real time from the time he called at 10:49 with you until the communication ended is real time on the tape; correct?
>
> A [witness/dispatcher]: Yes.

Doc. 10-7 at 7. The Court is at a loss as to how Petitioner claims the witness answering "yes" is not "the testimony of a witness."

By way of further example, in his reply, Petitioner states, "the prosecutor personally testified 'will give us a definite or an exact time as to when things happened.'" Doc. 10 at 12. The record is clear that the prosecutor did not "testify" and Petitioner is grossly mischaracterizing what occurred at trial. (Petitioner was represented by the same counsel at trial as he is in this habeas case; thus counsel should be clear as to what occurred at trial.)

[3] On this point, the Court notes that Petitioner's counsel repeatedly recounts a motive of the prosecutor: to knowingly and intentionally "lie" to the jury. The Court has found absolutely no evidence of any motive or mens rea of the prosecutor in this record. While the Court has not undertaken any investigation on this point, there is nothing in the record that rules out the possibility that the witness was unclear the first time she testified, which she clarified when the defense recalled her during the same trial. (There is no dispute that the jury ultimately heard the "true" facts.) Thus, Petitioner's repeated use of phrasing like, "[t]he evidence clearly reflects what the prosecutor did in this case, and *why*. The prosecutor *intentionally lied* to the jury …" (Doc. 12 at 13 (emphasis added)), is at best an exaggeration of the record actually contains.

> trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181 (quoting *Donnelly*, 416 U.S. at 642). "A prosecutor's knowing use of false testimony to get a conviction violates due process." *Jones v. Ryan*, 691 F.3d 1093, 1102 (9th Cir. 2012) (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). Such a claim requires a habeas petitioner to show "that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) ... the false testimony was material." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (quoting *United States v. Zuno–Arce*, 339 F.3d 886, 889 (9th Cir. 2003)). To establish that false testimony was material, the petitioner must show a "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). "Under this materiality standard, [t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Hayes*, 399 F.3d at 984 (internal quotation omitted).

Doc. 11 at 6-7.

Petitioner's next two objections, taken together, are to the R&R's ultimate conclusion as to whether Petitioner is entitled to relief. The R&R reaches the following two conclusions:

> Assuming without deciding that the testimony at issue was, in fact, false and that the State knew or should have known this, the Court cannot find that the false testimony was material. First, as Irizarry acknowledges, the dispatch record was irrelevant to the charged crimes. [footnote omitted]. (Doc. 10 at ¶ 23)
>
> Second, and crucially, Irizarry, through counsel, timely understood the potential issues with Exhibit 121 and recalled Kingsley to the stand. In front of the jury, Irizarry's counsel questioned Kingsley and the jury heard her answer follow-up questions about Exhibit 121: who created it, what was missing from it, and inconsistencies in her timeline. In other words, any concerns about Exhibit 121 were disclosed to the jury during Irizarry's case in chief. *See Soto v. Ryan*, 760 F.3d 947, 961 (9th Cir. 2014) (state court's decision to deny *Napue* claim was not "unreasonable because the evidence Petitioner claims reveals the deception in Godoy's direct examination testimony was in fact disclosed to the jury during trial"). Moreover, "defense counsel effectively crossexamined the witness, so that it was obvious to the jury that" her testimony contained inconsistencies. *Mata v. Sherman*, 2016 WL 1642642, *10 (E.D. Cal. Apr. 25, 2016). *See also Rosencrantz v. Lafler*, 568 F.3d 577, 585-86 (6th Cir. 2009) (collateral review does not lie when defense focused jury on inconsistent statements during crossexamination).

1  Doc. 11 at 7.[4]

2   Petitioner objects and argues that the prosecutor knowingly lied to the jury by
3  admitting irrelevant information to gain a tactical advantage. Doc. 12 at 13-16. First, the
4  Court agrees with the R&R that irrelevant testimony cannot be material. *See Hayes*, 399
5  F.3d at 984 (requiring a showing of materiality to prevail on a due process claim
6  premised on prosecutorial misconduct). Further, the Court finds no evidence to support
7  Petitioner's claim that the prosecutor obtained a tactical advantage. Specifically, the
8  alleged contradiction in the testimony was whether Petitioner was at a traffic stop for 6.5
9  minutes verses 2.5 minutes prior to his passenger shooting and killing the officer who
10 pulled him over. There is no dispute that Petitioner was charged only with actions that
11 occurred after he drove away from the scene of the murder. Therefore, the Court can find
12 no connection with the length of the traffic stop (be it two minutes, seven minutes, or two
13 hours) and Petitioner's actions fleeing from the scene after the "end" of the traffic stop.

---

[4] The Court notes that the R&R begins its discussion by saying "assuming without deciding that the testimony at issue was, in fact, false… ." For purposes of analyzing the Petition in this case, this is a perfectly acceptable approach. However, the Court notes that it is not clear on this record that any false testimony was actually given. The issue of whether the testimony was "false" all turns on the witness's interpretation of the words "real time." As indicated above in the recounting from the R&R, the witness testified that the recording represented her conversation with the victim in "real time." When the witness was recalled to the stand, the witness clarified that while the tape represented her entire conversation with the victim, she had other conversations with other officers that were edited out of the recording, which, if included, would have made the recording longer. It is not obvious to the Court that when the witness said yes to "real time" she was intentionally presenting false evidence regarding the totality of her conversation with the victim because the length and substance of that conversation was included in its entirety. The witness's confusion is highlighted as follows: "Q [defense counsel]: Did you testify that that tape was real time? A [dispatcher]: Yes. I don't understand what you mean by 'real time.' It's time stamped." Doc. 10-12 at 6. As a further example: "Q [defense counsel]: Did you testify that the tape was real time? A [dispatcher]: I guess I am confused by what you mean. That is my communication with Lieutenant Shoehandler as I recall that night." Doc. 10-12 at 6-7.

The Arizona Court of Appeals determined, "there was no false evidence or perjured testimony in regard to the recording and related testimony…." Doc. 9-3 at 140 ¶ 9 (Moreover, the trial court said Petitioner's counsel was "reckless" for characterizing this evidence as knowingly offering perjured testimony, based on the lack of support in the record for such a characterization. Doc. 9-3 at 160, n.1). This Court must defer to that factual determination the Arizona Court of Appeals unless it is unreasonable; which this Court does not find. *See Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998); *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). Regardless, for purposes of this Order only, the Court will adopt the same approach as the R&R and assume the first testimony was false, and that the second testimony, where the witness confirmed that the edits had occurred making the length of the recording longer, was true.

Petitioner repeatedly argues in his objections that his duress defense was impeached by the length of the traffic stop, but Petitioner makes no argument as to how this could possibly be true.

In his reply (Doc. 10 at 12), Petitioner argues that his overall credibility would be undermined if the stop was 2.5 minutes rather than 6.5 minutes because his testimony regarding what happened during the stop was more consistent with a 6.5 minute stop than a 2.5 minute stop.  However, Petitioner's testimony regarding what happened during the stop was never at issue, regardless of whether the actions occurred quickly or slowly, so the length of the stop remains immaterial.  Moreover, as will be discussed more fully, the 6.5 minute length was fully revealed to the jury, so to the extent Petitioner's credibility could possibly have been dependent on a 6.5 minute stop, the jury heard the correct length.  Thus, the Court agrees with R&R's ultimate conclusion that there is no reasonably likelihood that the "false" testimony could have affected the judgment of the jury.  Doc. 11 at 8 (quoting *Hamilton v. Ayers*, 583 F.3d 1100, 1111 (9th Cir. 2009)). Petitioner's objection (Doc. 12 at 16-17) based on the premise that any "false" testimony immediately amounts to a due process violation is overruled.

Second, the Court agrees with the R&R that because the jury heard the correct testimony about the length of the traffic stop when Petitioner recalled the witness during trial, any concern about the prior testimony was overcome.   Petitioner's objections do not refute this point.  Instead, Petitioner appears to vaguely take the position that if a witness makes a misstatement based on answering "yes" to a question by the prosecutor, a due process violation automatically occurs and cannot be corrected or harmless. Petitioner has cited nothing for this theory, and in fact, the cases cited by the R&R as adopted by this Court are to the contrary.  Accordingly, Petitioner's objection is overruled.

As is clear above, the Court has reviewed these facts applying clearly established Supreme Court case law.  Based on this review, the Court finds that the Arizona Court of Appeals' decision affirming Petitioner's conviction was not contrary to nor an

- 10 -

unreasonable application of clearly established law, nor an unreasonable determination of the facts. Accordingly, the R&R is accepted and relief on Claims 1 and 2 is denied.[5]

### B. Claim 3

The R&R concludes that Claim 3 was not properly exhausted before the Arizona courts. Doc. 11 at 4. The R&R also concludes the claim is now subject to a procedural bar and procedurally defaulted. Doc. 11 at 5. Finally, the R&R concludes that Petitioner cannot show cause and prejudice or actual innocence to overcome this default; thus relief on this claim must be denied. Doc. 11 at 5. Petitioner objects to this portion of the R&R in 5 respects. Doc. 12 at 8-11.

First, Petitioner claims that his issue in claim three (that six law enforcement officers who testified at trial perjured themselves) was raised as part of his motion to vacate, and that he appealed the denial of his motion to vacate. Doc. 12 at 8. Petitioner has no citation to the record for this assertion. The Court has read the entire opening brief of Petitioner filed with the Arizona Court of Appeals. Doc. 9-3 at 2-22. The Court has found no mention of the six officers' alleged perjured testimony. Accordingly, the Court agrees with the R&R that this claim was not fairly presented to the state courts and is now defaulted; Petitioner's objection is overruled.

In Petitioner's second and third objections, Petitioner again asserts his argument that his motion to vacate, which was made before the trial court, included Petitioner's arguments about the six officers' alleged perjured testimony. Doc. 12 at 9-10. Petitioner appears to be of the belief that by appealing the denial of the motion to vacate, Petitioner

---

[5] The Court notes that Petitioner claims that the "judicial branch" has engaged in a "cover up" of the prosecutor's actions. Doc. 12 at 1, line 25 and at 2, line 15. It is undisputed that the testimony about which Petitioner complains happened on the record in open court and the transcript is accurate. On this record, there is no evidence that the judges who have reviewed this case at various stages (the trial judge, three appellate judges, the trial judge on post-conviction relief, three additional appellate judges, and the Federal Magistrate Judge who authored the R&R) engaged in any type of "cover up." Further, there is no evidence to support Petitioner's allegation that the "judicial officers feign[ed] the inability to understand what the prosecutor did and why." Doc. 12 at 17. While the Court understands that a necessary part of advocacy is sometimes to argue that a particular court committed error, to impugn the integrity of the judicial branch as a whole based on no evidence goes well beyond appropriate advocacy.

effectively presented all arguments found in the motion to vacate before the trial court to the appellate court. *Id*. Petitioner cites nothing for this legal theory. Conversely, the R&R states:

> Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66.

Doc. 11 at 4. The R&R has correctly stated the law, which this Court accepts and adopts. Petitioner failed to present these operative facts to the Arizona Court of Appeals. Accordingly, for the reasons stated above, these objections are overruled.

Fourth, Petitioner argues that even if he defaulted, he can show actual innocence to overcome his default. Doc. 12 at 10. His theory of "actual innocence" is that he was acting under duress. "A complete defense, however, is not necessarily one that establishes the defendant's innocence." *Smith v. United States*, 133 S. Ct. 714, 719–20 (2013). Thus, even if Petitioner could prove he was acting under duress, it would not show actual innocence that would overcome his procedural default of this claim. Therefore, this objection is overruled.

Fifth, Petitioner objects to the R&R's citation of what the Petitioner deems to be irrelevant case law, specifically that habeas relief is not available for errors of state law. Doc. 12 at 11. The R&R correctly recounts the law. Doc. 11 at 6, 7 n.1. The issue is whether part of Petitioner's theory of a due process violation/prosecutorial misconduct was that irrelevant evidence was admitted at trial, which would be an error of state law. Petitioner claims he is not making any such argument. Doc. 12 at 12. While the Court agrees with the R&R that the phrasing of Petitioner's claims makes it sound like he is complaining about the admission of irrelevant evidence and its impact on his trial, Petitioner has expressly disavowed any such claim, and the Court accepts that waiver.

Having considered all of Petitioner's objections, the Court agrees with the R&R

that Claim 3 is subject to a procedural bar that Petitioner cannot overcome. Accordingly, relief on Claim 3 is denied.

## V. Conclusion

Based on the foregoing, the Court denies relief on Claims 1 and 2, and finds Claim 3 is barred. Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 11) is accepted or modified as specified above. The objections are overruled or sustained (Doc. 12) as specified above. The Petition is denied, with prejudice, and the Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability because jurists of reason would not find the procedural ruling debatable and Petitioner has not made a substantial showing of the denial of a constitutional right on the remaining claims.

Dated this 8th day of September, 2016.

James A. Teilborg
Senior United States District Judge